John G. Balestriere
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **THEODOSIA BILLIE STREETS** | |
| Plaintiff, | Case No. |
| – against – | |
| **DANIEL MANGENA a.k.a LINDANI MANGENA, DREAMER HQ, INC., FINANCIAL FREEDOM IN A BOX a.k.a FINANCIAL ABUNDANCE UNLEASHED, and POTB ENTERPRISES, LLC** | **COMPLAINT** |
| Defendants. | |

Plaintiff Theodosia Billie Streets ("Streets") by her attorneys, Balestriere Fariello, for her Complaint against Defendants Daniel Mangena a.k.a Lindani Mangena ("Mangena"), Dreamer HQ, Inc., ("Dreamer HQ" or the "Company"), Financial Freedom in a Box a.k.a Financial Abundance Unleashed ("FFIaB"), and POTB Enterprises, LLC ("POTB") (collectively "Defendants") respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.     On February 22, 2022, Streets was duped into a contract by Mangena where she joined two of his ventures FFIaB and Dream with Dan ("Dream") both of which promised the replacement of a six-figure salary with a completely passive income.

2.     However, after investing $20,000 of her own money, and accumulating an overwhelming amount of credit card debt based on false promises made to her, Streets received nowhere near the return that she was promised. Instead, she was gaslit into thinking her alleged failures were her fault, and has since suffered over $120,000 in losses paying back credit card debt she accrued based on Mangena's promises that the ventures would pay on her behalf if she got the credit cards in the first place.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) and 28 U.S.C. § 1332(a)(3) as Dreamers HQ, Inc. is a registered company organized and incorporated under the laws of the State of New York.

4.     Venue is proper in this District under 28 U.S.C. § 1391(a) and § 1391(b)(2).

**PARTIES**

5.      Plaintiff Theodosia Billie Streets is, and at all times mentioned in this complaint was, an individual who resides in the State of New Jersey.

6.      Defendant Daniel Mangena a.k.a Lindani Mangena is and at all times mentioned in this complaint was, an individual who resides in Los Cabos, Baja California Sur, Mexico.

7.      Defendant Dreamer HQ, Inc. is, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of New York with a principal place of business in the State of New York.

8.      Defendant FFIaB is and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of New York with a principal place of business in the State of New York.

9.      Defendant POTB is and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of Washington with a principal place of business in the State of Washington

**STATEMENT OF FACTS**

10.      In December 2020, Streets was introduced to Daniel Mangena ("Mangena"), a self-proclaimed life coach and motivational speaker from London, United Kingdom, when he was a speaker turned member at an on-line group/Masterclass that Streets was a member of.

11.     Mangena presented himself on several online platforms as someone whose lifegoal was to help others find what they were really meant to achieve in life through his ventures, among them, Dream, FFIaB, and PTOB Enterprises.

12.     Mangena represented FFIaB as a program that targeted corporate professionals and entrepreneurs and promised to swap their six-figure salary with a completely passive income.

13.     Streets and Dreamer HQ entered into a contract on February 22, 2022.

14.     Mangena convinced Streets to provide him with her signature, Social Security number, and many other sensitive details, including her personal bank account information, to supposedly send her inflow money to.

15.     Streets invested an initial amount of $20,000 of her own money as required by Mangena's venture FFIaB, despite Mangena's website advertising the venture worked "without risking your own money or leaving your job."

16.     Streets was promised that she would receive a profit of at least $60,000 in the first year, so by February 22, 2023.

17.     FFIaB works by making its victims open credit cards as a requirement to initiate the launching of their passive income streams in order for them to begin receiving benefits from the venture.

18.     FFIaB asks its victims for personal and sensitive information in order to allegedly source funding to support the creation of several passive income streams that secure net returns of a minimum annual net income of $60,000.

19.     Plaintiff was told that the alleged passive income streams were sourced from an arbitrage where Defendant Mangena was allegedly selling books, cat food, dog food, etc., and she would receive some of that revenue.

20.     Defendants advised Plaintiff through their recommended advisor to take out credit cards until her credit limits altogether totaled between $50,000–$100,000 (see below).

**Re: Credit Cards**

**Rudiger Merz** <rudigermerz@gmail.com>
To: Billie Streets <tbstreets22@gmail.com>

Congratulations.

During the first round of business credit cards, we want you to get in access of $50k total, usually between $50k - $100k.

Tomorrow, I'll share with you additional cards to apply as well as strategies to increase your current limits.

This is a good start.

Congratulations again.

Rudiger



**Rudiger Merz**
CEO & Co-Founder, GWC LLC

21.     On June 7, 2022, Defendant Mangena advised Streets that any minimum payments due on the credit cards would be paid by them (see below).



22.     Streets continued to accumulate an overwhelming amount of credit card debt as a result of the several credit lines she was required to open by Defendants, who promised liability for minimum payments on the cards and later claimed it was merely "a courtesy."

23.     Defendants stopped making minimum payments on the credit cards by March 2023 and Streets has since been held liable for monthly minimum payments on credit cards with American Express, Bank of America, Capital One, and Chase.

24.     Streets began incurring charges on May 22, 2022, and the last charge was on December 30, 2022.

25.     Streets has incurred more in credit card debt than the amount of at least $60,000 she was promised.

26.     To date, over $79,000 has been charged on Streets's credit cards which she continues to pay off each month in an attempt to reduce the credit card debts.

27.     Mangena told Streets that Defendants would cover the monthly credit card payments. The idea was that, with the deposits Streets was to receive from Defendants and Mangena making minimum payments, the credit card debts would be paid off within a reasonable period of time. However, this has not been the case.

28.     Streets's interest rate on the credit cards Defendants advise her to open were 0% in the first year and now average between 23–24%.

29.     Concerned for her credit, Streets had no choice but to take out a personal loan through American Express to pay off debts that she had incurred on behalf of Defendants.

30.     Streets continues to be damaged significantly as she is still paying off the credit card debts.

31.     Mangena made threats to involve his lawyer if Streets and others did not comply with his demands or requests, some of which include (but are not limited to) asking Streets to continue making payments to his ventures and ensuring that Streets fulfills the terms of an agreement Mangena has already broken himself.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FRAUD

32.     Plaintiff realleges and incorporates each and every one of the above allegations as if set out here in full.

33.     Defendants misrepresented their past success in providing passive income streams for their clients. Specifically, Defendants represented that they would provide services that resulted in passive income streams for Plaintiff like they have done for others.

34.     Defendants made this representation to deceive Plaintiff into entering into an agreement that would cost Plaintiff thousands of dollars.

35.     Specifically, Defendants deliberately misrepresented their venture to induce Plaintiff to incur a copious amount of credit card debt on behalf of Defendants.

36.     Plaintiff relied on the Defendants' misrepresentations by opening at least four lines of credit in her name to open start receiving her promised passive income streams.

37.     Defendants concealed the falsity of the representation of their promises by sending Plaintiff multiple success stories and deceptive proof of Defendant Mangena's own wealth, as well as assigning a salesperson to keep in touch with and encourage Plaintiff to keep investing in the program.

38.     As a direct and proximate result of relying on Defendants' misrepresentations, Plaintiff was damaged as a result of the overwhelming credit card debt she has incurred.

39.     Specifically, Plaintiff sustained out of pocket losses of at least $120,000 in credit card debt due to Defendants' misrepresentations.

40.     Defendants' intentional misrepresentations, inducing Plaintiff's reliance thereon, was the direct and proximate cause of Plaintiff's loss, which Plaintiff would not have sustained but for Defendants' fraud.

41.     As a result of Defendants' fraud, Plaintiff is entitled to an award of damages in an amount to be proved at trial, but no less than $120,000.

### SECOND CAUSE OF ACTION
### FRAUDULENT INDUCEMENT

42.     Plaintiff realleges and incorporates each and every one of the above allegations as if set out here in full.

43.     Defendants promised Plaintiff that she would gain passive income by investing in their ventures. Specifically, Defendant Mangena promised that Plaintiff would be guaranteed double her initial investment by year end of 2022.

44.     Defendants made these representations when Plaintiff sincerely sought

9

financial and entrepreneurial advice from Defendants.

45.     Defendants' promises that Plaintiff's investment amount would be doubled by after a year and that Plaintiff was "guaranteed" passive income were materially false and misleading because Defendants never met their obligations under the contract.

46.     Defendants knew these representations were false when the Defendants made them because Defendant Mangena had never fulfilled these representations in the past and has had multiple complaints against him.

47.     Defendants deliberately made false promises to induce Plaintiff to enter into the contract.

48.     Plaintiff relied to her detriment on Defendants' false promises by entering into the contract.

49.     Defendants concealed the insincerity of their promises by sending Plaintiff multiple success stories and deceptive proof of Defendant Mangena's own wealth, as well as assigning a salesperson to keep in touch with and encourage Plaintiff to keep investing in the program.

50.     As a direct and proximate result of relying on Defendants' false promises inducing the Plaintiff to enter into the contract, Plaintiff was damaged by setting up several credit accounts which she has to pay debts on.

51.     Specifically, Plaintiff sustained out-of-pocket losses of at least $120,000, representing credit card debts, due to Defendants' fraudulent inducement of the contract.

52.     As a result of Defendants' fraudulent inducement of the parties' contract,

Plaintiff is entitled to an award of damages in an amount to be proved at trial, but no less than $120,000.

53.     Plaintiff is also entitled to recover from Defendants all damages she has suffered as a consequence of Defendants' acts or omissions as detailed herein, including but not limited to expenses incurred in bringing this action and any additional relief that this Court deems necessary and appropriate.

### THIRD CAUSE OF ACTION
**BREACH OF CONTRACT**

54.     Plaintiff realleges and incorporates each and every one of the above allegations as if set out here in full.

55.     Plaintiff entered into a valid and binding agreement with Defendants on February 22, 2022, in which Defendants promised to source funding to support the creation of several passive income streams for Plaintiff.

56.     As alleged hereinabove, Plaintiff at all times performed her obligations under the contract including making a down payment of $20,000 on February 25, 2022, to FFIaB in return for its services and Defendants did not provide the "services" it promised under the agreement.

*57.*     Specifically, among other things, Defendants failed to source funding to support the creation of several passive income streams, secure income streams providing sufficient net returns to provide a minimum annual net income of $60,000, and arrange expert legal, financial, and other professional business services to support a tax efficient structure.

58.     As a direct result of Defendants' breach of the contract, Plaintiff has suffered and continues to suffer monetary damages in an amount to be determined at trial, but believed to be in an amount of at least $120,000, together with the costs and disbursements incurred in this action.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

59.     Plaintiff realleges and incorporates each and every one of the above allegations as is set out here in full.

60.     Plaintiff entered into a valid and binding agreement with Defendants.

61.     As alleged herein, Plaintiff at all times performed her obligations under the Agreement and Defendants did not.

62.     By reason of their wrongful acts and omissions, Defendants have enriched themselves unjustly at the expense and detriment of Plaintiff.

63.     Defendants should not be permitted in equity and good conscience to retain for themselves any amount that rightfully belongs to Plaintiff.

64.     By reason of the foregoing, Plaintiff has been injured in an amount to be determined at trial, but not less than $120,000.

### PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendants, awarding:

A.  Compensatory damages in an amount to be determined at trial;

B.  Punitive damages in an amount to be determined at trial;

C.  Applicable interest on the foregoing amount;

D.  Costs of suit herein;

E.  Investigation costs;

F.  Payment of reasonable attorneys' fees;

G.  Pre-judgment and post-judgment interest on the damages caused by Defendants'

acts and omissions as detailed herein; and

H.  Any and all other relief the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury for all issues so triable in this action.

Dated: New York, New York
         December 6, 2023

_____
John G. Balestriere
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile:   (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Attorneys for Plaintiffs*