```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/24/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Theodosia Billie Streets,

                        **Plaintiff,**

-against-

Daniel Mangena a/k/a Lindani Mangena, and Dreamer HQ Inc.,

                        **Defendants.**

1:23-cv-10648 (AT) (SDA)

REPORT AND RECOMMENDATION

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is a motion by Plaintiff Theodosia Billie Streets ("Plaintiff") for a default judgment to be entered against Defendant Daniel Mangena, a/k/a Lindani Mangena ("Mangena") and Dreamer HQ, Inc. ("Dreamer HQ"; together with Mangena, "Defendants"), jointly and severally. (Pl.'s 1/13/25 Mot., ECF No. 78, at PDF p. 5.) For the reasons stated below, the undersigned respectfully recommends that the Court enter a default judgment as set forth in the Conclusion.

## BACKGROUND

**I.     Established Facts as a Result of Defendants' Default[1]**

In December 2020, Streets was introduced to Mangena, a self-proclaimed life coach and motivational speaker from London, United Kingdom, when he was a member of an on-line group/Masterclass of which Streets also was a member. (Compl., ECF No. 1, ¶ 10; Streets 1/12/25

---

[1] In light of Defendants' default, the Court accepts Plaintiff's allegations as true, except for those pertaining to damages. *See Finkel v. Romanwicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Decl., ECF No. 78-1. ¶ 3.) Mangena presented himself on several online platforms as someone whose life goal was to help others find what they were really meant to achieve in life through his ventures, among them, Dreamer HQ. (Compl. ¶ 11; Streets 1/12/25 Decl. ¶ 4.) Mangena told Streets about Mangena's investment program called "Financial Freedom in a Box." (Streets 1/12/25 Decl. ¶ 6.) According to Mangena, the program targeted corporate professionals and entrepreneurs and promised to swap their six-figure salaries with completely "passive income"— *i.e.*, income that was realized without risking more than nominal amounts of the investors' own funds and without any significant labor by the investor. (*Id*. ¶ 7.) Streets was told that the passive income streams were sourced from an "arbitrage" where Mangena was selling books, cat food, dog food, etc., and investors like Streets would receive some of the revenue. (Compl. ¶ 19; Streets 1/13/25 Decl. ¶¶ 10-11.) Mangena told Streets that the program required a modest cash payment from Streets, but the rest of the investment funds would come from credit cards, opened at low or no interest introductory rates, that Mangena represented would be paid off before the introductory term ended by the ample income streams he said would be generated by the underlying business. (Streets 1/13/25 Decl. ¶ 9.)

On February 22, 2022, Streets and Dreamer HQ (an entity controlled by Mangena) entered into an agreement (the "Agreement"). (Compl. ¶ 13; Streets 1/12/25 Decl. ¶ 12; Agmt., ECF No. 78-2.) Pursuant to the terms of the Agreement, Streets invested an initial amount of $20,000.00 of her own money.[2] (Compl. ¶ 15; Streets 1/13/25 Decl. ¶ 18; Agmt. at 000345.) The

---

[2] At Mangena's urging, Streets used a New Jersey limited liability company, T. Billie Streets, LLC ("Streets LLC"), of which she was the sole member, to make this payment. (Streets 1/12/25 Decl. ¶ 17.)

Agreement stated that Dreamer HQ would "secure income streams providing sufficient net returns to provide a minimum annual net income of USD$60,000." (Agmt. at 000344.)

Mangena introduced Streets to Rudiger Merz ("Merz"), who was to assist Streets in obtaining credit cards at low introductory rates. (Streets 1/13/25 Decl.¶ 19.) Merz told Streets to obtain credit cards until Streets's credit limits altogether totaled between $50,000.00 and $100,000.00 (Compl. ¶ 20.) At his request, Streets gave Merz power of attorney to obtain credit cards for Mangena's investment program, which he did.[3] (Streets 1/13/25 Decl.¶ 21.) Mangena advised Streets that Defendants would cover the monthly payments on the credit cards. (Compl. ¶¶ 21, 27; Streets 1/13/02 Decl. ¶ 11.)

Streets accumulated a significant amount of credit card debt as a result of the several credit lines she was required to open by Defendants. (Compl. ¶ 22.) Mangena charged a total of $119,500.00 to Streets's credit cards, which Streets had to pay because Defendants failed to pay the amounts due. (Compl. ¶ 23; Streets 1/13/25 Decl. ¶¶ 25, 27-28, 37.) In addition, Streets paid a total of $1,390.00 in annual fees on the credit cards that Defendants had her obtain, for which she was not reimbursed. (Streets 1/13/25 Decl. ¶ 26, 37.)

Streets later learned that there were no underlying income streams. (Streets 1/13/25 Decl. ¶ 15.) There is no evidence that Defendants ever opened any online store or other business with Streets's investment. (*Id*.) Streets also learned that Mangena was convicted in the United Kingdom of operating a fraudulent scheme with a large number of victims. (*Id*. ¶ 32; *see also Regina v. Mangena*, [2009] EWCA Crim 2535, 2009 WL 4113791 (Ct. App., Crim. Div. Oct. 13,

---

[3] At Mangena's urging, the credit cards were opened in the name of Streets LLC. (Streets 1/12/25 Decl. ¶ 17.)

2009); Pl.'s 1/13/25 Mot. at PDF p. 17.) In addition, she learned of other individuals who were similarly defrauded by Mangena. (*Id*. ¶ 31; *see also* Goodenough Decl., ECF No. 78-30; Hines Decl., ECF No. 78-31; Burnham Decl., ECF No. 78-32; Pertuis Decl., ECF No. 78-33; Rafalowski Decl., ECF No. 78-34.)

## II. Procedural History

On December 6, 2023, Plaintiff filed her Complaint in this action asserting claims for fraud, fraudulent inducement, breach of contract and unjust enrichment against Mangena and Dreamer HQ.[4] (Compl., ECF No. 1, ¶¶ 32-64.) On March 6, 2024, Aaron H. Pierce, Esq. ("Attorney Pierce"), appeared for Mangena and Dreamer HQ and filed an Answer to the Complaint on their behalf. (Not. of Appearance (Pierce), ECF No. 22; Answer, ECF No. 23.)

On May 30, 2024, a Case Management Plan and Scheduling Order was entered setting fact and expert discovery deadlines. (Case Mgt. Plan, ECF No. 31.) Thereafter, discovery requests were exchanged by the parties. (*See* Pl.'s Billing Stmt. Excerpts, ECF No. 83-5.) Plaintiff responded to the discovery requests, but Defendants did not. (*See* Pl.'s 2/4/25 Suppl. Mem., ECF No 83, at 2-4.)

On July 19, 2024, Attorney Pierce filed a motion to withdraw as counsel for Mangena (Mangena MTW, ECF No. 47.) On August 5, 2024, Attorney Pierce filed a motion to withdraw as counsel for Dreamer HQ. (Dreamer HQ MTW, ECF No. 55.) On August 21, 2024, the Court granted Attorney Pierce's motions to withdraw as counsel for both Mangena and Dreamer HQ. (8/21/24

---

[4] Financial Freedom in a Box, a/k/a Financial Abundance Unleashed and POTB Enterprises, LLC also were named as defendants in the Complaint, but the claims against those entities were later dismissed without prejudice. (Not. of Voluntary Dismissal (POTB), ECF No. 35; So Ordered Not. of Voluntary Dismissal (POTB), ECF No. 37; 6/6/24 Order, ECF No. 38; Not. of Voluntary Dismissal (FFB), ECF No. 39.)

4

Order, ECF No. 60.) In its August 21, 2024 Order, the Court provided Mangena and Dreamer HQ 21 days to secure new counsel and stated in part:

> Mangena is reminded that, even if he does not secure new counsel, he may appear *pro se*, but is required to comply with all Court Orders and deadlines. Failure to do so may result in the imposition of sanctions, up to and including entry of a default judgment against him.
>
> . . .
>
> If Dreamer HQ has not appeared by counsel by September 11, 2024, Plaintiffs shall, no later than September 13, 2024, seek a certificate of default from the Clerk of Court against Dreamer HQ[.]

(*Id.* at 2-3.) The Court required Attorney Pierce to serve the Court's Order and provide contact information for Mangena and Dreamer HQ. (*Id.* at 3.) The Court also ordered Plaintiff to confer with Mangena (or any new counsel) and file a status letter outlining any remaining discovery disputes, and scheduled a telephone conference to take place on September 30, 2024. (*Id.* at 3.)

After counsel did not appear on behalf of Dreamer HQ by September 11, 2024, Plaintiff sought a Clerk's Certificate of Default as to Dreamer HQ. (Prop. Clerk's Cert. of Default (Dreamer HQ), ECF No. 64; Weiner Decl. (Dreamer HQ), ECF No. 65.) On September 19, 2024, a Clerk's Certificate of Default was issued as to Dreamer HQ. (Clerk's Cert. of Default (Dreamer HQ), ECF No. 66.)

On September 20, 2024, Plaintiff filed a letter apprising the Court, as follows:

> Defendants have failed and refused to answer or respond to Plaintiff's timely discovery demands and, in addition, have failed to make any initial disclosures as required under Federal Rule of Civil Procedure 26(a)(1) and the operative Civil Case Management Plan and Scheduling Order[.]

5

(Pl.'s 9/20/24 Ltr., ECF No. 67, at 1.) Based on Mangena's failure to make or cooperate in discovery, Plaintiff requested, among other things, leave to move to strike Mangena's Answer. (*Id.* at 2.)

On September 30, 2024, the Court held a telephonic conference, at which counsel for Plaintiff appeared and Mangena failed to appear. (9/30/24 Minute Entry; *see also* 9/30/24 Order, ECF No. 68, at 1.) In an Order dated September 30, 2024, the Court directed Mangena to serve his initial disclosures and respond to Plaintiff's document requests no later than October 14, 2024, and in the event he did not, required Plaintiff to file a letter to the ECF docket no later than October 18, 2024, stating whether Mangena complied with the Court's Order. (9/30/24 Order at 2.) The Court stated that Mangena's failure to comply would result in the undersigned recommending to District Judge Torres that the Court enter a default judgment against Mangena pursuant to Rules 16 and 37 of the Federal Rules of Civil Procedure. (*Id.* at 3.)

On October 17, 2024, Plaintiff apprised the Court that Mangena did not comply with the Court's September 30, 2024 Order, and requested the Court to enforce the same by issuing a recommendation for a default judgment as to Mangena. (Pl.'s 10/17/24 Ltr., ECF No. 70, at 1-2.) On October 18, 2024, the undersigned recommended that the Court strike Mangena's Answer and direct the Clerk of Court to enter a Certificate of Default as to Mangena. (10/18/24 R&R, ECF No. 71.) On November 8, 2024, District Judge Torres adopted the recommendation. (11/8/24 Order, ECF No. 72.) On November 12, 2024, the Clerk of Court issued a Certificate of Default against Mangena. (Clerk's Cert. of Default (Mangena), ECF No. 74.)

Also on November 12, 2024, the undersigned issued an Order directing Plaintiff to file her motion for a default judgment no later than December 13, 2024. (11/12/24 Order, ECF No. 75.)

After receiving an extension of her time to file the motion (*see* 11/26/24 Mem. End., ECF No. 77), on January 13, 2025, Plaintiff filed the motion for default judgment that currently is pending before the Court. (*See* Pl.'s 1/13/25 Mot.) On January 14, 2025, the undersigned issued an Order requiring Plaintiff to file a supplemental submission setting forth the basis for the requested attorneys' fees. (1/14/25 Order, ECF No. 80.) On February 4, 2025, Plaintiff filed her supplemental submission. (*See* Pl.'s 2/4/25 Suppl. Mem.)

On February 8, 2025, the Court issued an Order requiring Defendants to respond to Plaintiff's motion and supplemental memorandum no later than February 21, 2025. (2/8/25 Order, ECF No. 85.) Defendants failed to file any response.

## DISCUSSION

This Court has subject matter jurisdiction over this action because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332(a)(1). In addition, both Mangena and Dreamer HQ waived any defense of lack of personal jurisdiction since neither moved to dismiss on personal jurisdiction grounds and did not assert a defense of lack of personal jurisdiction in their Answer (*see* Ans. at pp. 6-10).[5] *See* Fed. R. Civ. P. 12(h)(1)(B); *see also Credle-Brown v. Connecticut*, 246 F.R.D. 408, 409 (D. Conn. 2007) ("lack of personal jurisdiction is deemed waived if not raised in either defendants' answer to the complaint or in a motion to dismiss"). Thus, the Court turns its attention to the damages to which Plaintiff is entitled.

---

[5] In addition, the Court has personal jurisdiction over Dreamer HQ because it is a New York corporation with its principal place of business in New York. *See Arzu v. Am. Airlines, Inc.*, 690 F. Supp. 3d 242, 247-48 (S.D.N.Y. 2023) (personal jurisdiction exists over company in state that is company's formal place of incorporation or its principal place of business).

I.  **Damages Due To Plaintiff**[6]

    A.  **Compensatory Damages**

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Am. Jewish Comm. v. Berman*, No. 15-CV-05983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). A plaintiff "bears the burden of establishing its entitlement to recovery and thus must substantiate its claim with evidence to prove the extent of its damages." *Id*. at *3 (alterations and citation omitted).

In its motion, Plaintiff seeks a default judgment based upon her fraudulent inducement claim. (Pl.'s 1/13/25 Mot. at PDF p. 20.) "In order to plead a cause of action for common law fraud or fraudulent inducement under New York law,[7] a plaintiff must allege that (i) the defendant made a material false representation, (ii) the defendant intended to defraud the plaintiff thereby, (iii) the plaintiff reasonably relied upon the representation, and (iv) the plaintiff suffered damage as a result of such reliance." *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 528 (S.D.N.Y. 2001) (citing *Banque Arabe et Internationale D'Investissement v. Maryland*

---

[6] Although the Court may hold a hearing to assess damages, a hearing is not required where, as here, a sufficient basis on which to make a calculation of damages exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (quoting *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)).

[7] Plaintiff asserts, and the Court agrees, that it is appropriate to apply New York law here. (Pl.'s 1/13/25 Mot. at PDF p. 19-20 & n.4.)

*Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). Plaintiff adequately alleges a fraudulent inducement claim against Mangena. Mangena made false representations to Streets about the existence of the expected income streams. (Streets 1/13/25 Decl. ¶¶ 6-11.) Mangena made the representations with the intention that Streets rely upon them. (*See* Compl. ¶ 34.) Streets did rely upon those representations in investing her cash and authorizing the opening and use of her credit card accounts. (Streets 1/13/25 Decl. ¶¶ 17-24.) As a result of her reliance on Mangena's false representations, Streets suffered damages in the amounts of her initial investment ($20,000.00), credit card charges ($119,500.00) and credit card fees ($1,390.00). (*Id*. ¶¶ 25-26, 37.) Accordingly, it is recommended that Plaintiff recover compensatory damages against Mangena in the amount of $140,890.00.

### B. Prejudgment Interest

Plaintiff seeks to recover prejudgment interest on the compensatory damages award. (Pl.'s 1/13/25 Mot. at PDF pp. 22-23.) New York Civil Practice Law and Rules 5001(a) provides that interest "shall be recovered upon a sum awarded . . . because of an act or omission depriving or otherwise interfering with . . . possession or enjoyment of[] property." N.Y. C.P.L.R. § 5001(a). Here, Streets was deprived of monies by reason of Defendants' fraud and therefore is entitled to prejudgment interest. *See Versatile Housewares & Gardening Sys., Inc. v. SAS Group, Inc.*, No. 09-CV-10182 (SHS), 2016 WL 4064036 at *6 (S.D.N.Y. Jul. 21, 2016) (awarding prejudgment interest under CPLR § 5001(a) on fraudulent inducement claim).

The Court recommends that Plaintiff be awarded prejudgment interest at the rate of nine percent per annum, as required by New York law. *See* N.Y. C.P.L.R. §§ 5001(a), 5004(a). When calculating the interest due, it "shall be computed from the earliest ascertainable date the cause

of action existed." N.Y. C.P.L.R. § 5001(b). "Where, as here, damages are incurred on a number of separate occasions, 'interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.'" *G-Concept Ltd. v. A.H. Schreiber Co. Inc*., No. 14-CV-06581 (JGK), 2015 WL 3767263, at *2 (S.D.N.Y. June 17, 2015) (quoting N.Y. C.P.L.R. §§ 5001(b)). "Which date to use is up to the Court's discretion." *Voice Tele Servs. Inc. v. Blu-Dot Telecoms Ltd*., No. 19-CV-05252 (JGK) (OTW), 2019 WL 6497507, at *4 (S.D.N.Y. Dec. 2, 2019) (citation omitted). Based upon the chart submitted by Plaintiff (*see* Pl.'s 1/13/25 Mot. at PDF p. 23), the Court recommends selecting September 17, 2022 as a single reasonable intermediate date from which prejudgment interest shall be calculated through the date that judgment is entered.

### C. Punitive Damages

Plaintiff seeks an award of punitive damages "of at least four times" the amount of compensatory damages. (Pl.'s 1/13/25 Mot. at PDF p. 25.) "While punitive damages are not recoverable for an ordinary breach of contract, it is elemental that a claim for fraud or fraudulent inducement may serve as a foundation for an award of punitive damages." *Int'l Design Concepts, LLC v. Saks Inc*., 486 F. Supp. 2d 229, 238 (S.D.N.Y. 2007) (internal quotation marks & citation omitted). "Punitive damages are ordinarily awarded in limited cases involving conduct that may be characterized as gross and morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations." *Oneida Sav. Bank v. Uni-Ter Underwriting Mgmt. Corp*., No. 5:13-CV-00746 (MAD) (ATB), 2014 WL 4678046, at *19 (N.D.N.Y. Sept. 18, 2014) (cleaned up).

In the present case, Plaintiff has demonstrated that Mangena's conduct met the very high standard required for the imposition of punitive damages. Not only has Plaintiff shown the blatant misrepresentations made by Mangena to Plaintiff herself, but Plaintiff also has shown similar fraudulent conduct by Mangena directed towards five others (Goodenough, Hines, Burnham, Pertius and Rafalowski). In addition, Plaintiff has shown prior conduct by Mangena in the United Kingdom affecting a large number of victims. Thus, the Court finds that Plaintiff is entitled to an award of punitive damages. However, the amount of punitive damages sought by Plaintiff (*i.e.*, at least four times the amount of compensatory damages) is excessive.

"[I]t should be assumed that the plaintiff is made whole by compensatory damages, and therefore, the further sanction of punitive damages is warranted only insofar as the reprehensibility of the defendant's conduct requires punishment or deterrence." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 276 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015). Here, as in *Koch*, "[t]he reprehensibility and flagrancy of [Mangena's] conduct indicate that some punitive award is appropriate in this case," but as in *Koch*, an award of twice the amount of compensatory damages is sufficient to punish Mangena and to deter others. *See Koch*, 14 F. Supp. 3d at 275; *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165 (2d Cir. 2014) (finding four-to-one ratio of punitive to compensatory damages excessive and ordering reduced punitive damages award of two-to one ratio or, if plaintiff did not accept the reduced award, new trial).

Accordingly, the Court recommends that a punitive damages award of $281,780.00 is appropriate in this case (*i.e.*, twice the $140,890.00 compensatory damages award).

### D. Joint And Several Liability

The Court finds that Plaintiff has established that Dreamer HQ is jointly and severally liable with Mangena for the damages to be awarded to Plaintiff. New York law recognizes "reverse" veil-piercing, whereby a corporation is held liable for the debts of its owners. *See In re Nordlicht*, 115 F.4th 90, 107 (2d Cir. 2024). "To succeed on [a reverse veil piercing] claim, a plaintiff must show that (1) the owner exercised complete domination over the corporate entity with respect to the transactions at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id*. (internal quotation marks and citation omitted).

In the present case, accepting Plaintiff's allegations as true, Mangena exercised complete domination over Dreamer HQ and used Dreamer HQ to perpetrate the fraud on Plaintiff. After all, the Agreement that was the centerpiece of the fraud was entered into between Plaintiff and Dreamer HQ, and Mangena signed the Agreement on behalf of Dreamer HQ. (*See* Agmt. at 000349.)

## II. Attorneys' Fees

Plaintiff also seeks to recover attorneys' fees in the amount of $13,924.15. (Pl.'s 2/24/25 Suppl. Mem. at 1-8.) "The awarding of attorneys' fees in diversity cases is governed by state law." *Glassman-Brown v. Pouring Wine, LLC*, No. 14-CV-03763 (TPG) (KNF), 2015 WL 5853802, at *7 (S.D.N.Y. Aug. 5, 2015) (quoting *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985)) (alterations omitted), *report and recommendation adopted in part*, 2015 WL 5853807 (S.D.N.Y. Oct. 7, 2015). In New York, "[u]nder the American Rule, 'attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized

by agreement between the parties, statute or court rule[.]'" *Sage Sys., Inc. v. Liss*, 39 N.Y.3d 27, 30-31 (2022) (quoting *Hooper Assoc. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989)).

In the present case, attorneys' fees are not authorized by any agreement, statute or court rule, and Plaintiff does not contend otherwise. (*See generally* Pl.'s 2/4/25 Suppl. Mem.) Instead, Plaintiff argues in her supplemental submission that she is entitled to attorneys' fees based upon Defendants' bad faith conduct in litigating this action, pursuant to the Court's "inherent authority." (*See id*. at 1-2.) There is a "bad faith exception to the 'American Rule' against fee shifting," by which courts may impose attorneys' fees as an exercise of their "inherent power." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991). This inherent power permits courts to "assess attorney's fees as a sanction for the 'willful disobedience of a court order,'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citation omitted), as well as to sanction a party that "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45–46 (citation omitted).

The relevant precedent erects a high bar to fee shifting through a court's inherent powers, which Plaintiff does not satisfy in this case. "The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion.'" *Int'l Bhd. of Teamsters*, 948 F.2d at 1345 (quoting *Chambers*, 501 U.S. at 44); *see Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 n.5 (2017) (noting that court's "inherent authority . . . should be exercised with especial 'restraint and discretion'" (citation omitted)). An award of attorneys' fees under the Court's inherent power requires "a clear demonstration of bad faith in order to justify sanctions." *Int'l Bhd. of Teamsters*, 948 F.2d at 1347. "That bad faith must be shown by (1) 'clear evidence' o[f] (2) 'harassment or delay or . . . other improper

13

purposes.'" *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (omission in original) (quoting *Int'l Bhd. of Teamsters*, 948 F.2d at 1345).

In the present case, in arguing for the assessment of attorneys' fees against Defendants pursuant to the Court's inherent powers, and as evidence of Defendants' bad faith, Plaintiff argues, first, that Defendants "have not shown any colorable basis for the defenses and denials set forth in the now-struck Answer;" and second, that "Mangena has crafted every stage of his scheme to make the cost of litigation prohibitive for individual litigants." (Pl.'s 2/4/25 Suppl. Mem. at 5-6.) As to Plaintiff's first point, by the very nature of Defendants' default they could not have shown a basis for the defenses and denials in their Answer (if there were any). If a court's inherent authority could be used to assess attorneys' fees based upon a defendant's failure to show a colorable basis for defenses and denials in an Answer, then fees could be assessed in every case where a defendant has defaulted, which plainly is not the law, given the restraint a court must use in the context of exercising its inherent powers. As to Plaintiff's second point, the record reflects that Defendants retained counsel who litigated the case by answering the Complaint in March 2024 (*see* Answer), entering into a Case Management Plan in May 2024 (*see* Case Mgt. Plan) and serving discovery requests in June 2024 (*see* Pl.'s Billing Stmt. Excerpts at PDF p. 3), and that defense counsel in July 2024 moved to withdraw as a result of Mangena's "inability to respond to any communication as well as non-payment of attorney's fees" (Pierce Decl., ECF No. 47-1, ¶ 4), which motion was granted in August 2024. (8/21/24 Order, ECF No. 60.) Thereafter, Defendants defaulted, which led to the filing of the motion for default judgment now before the Court. The Court finds that these actions by Defendants (*i.e.*, retaining counsel, failing to pay counsel and defaulting) do not reflect clear evidence of harassment, delay or other

improper purposes to warrant an award of attorneys' fees to Plaintiff under the Court's inherent power.

Accordingly, the undersigned recommends that Plaintiff not be awarded the $13,924.15 in attorneys' fees that she seeks.

### III. Costs

Although Plaintiff states that she seeks to recover taxable costs (*see* Pl.'s 1/13/25 Mot. at PDF p. 25), she does not provide an itemization of any such costs. The Court takes judicial notice of the $405.00 filing fee and recommends awarding that amount to Plaintiff, but declines to recommend any other costs due to the lack of evidence of such costs. *See Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 510 (S.D.N.Y. 2013) (awarding only filing fee to Plaintiff where Plaintiff "provided the Court with no evidence as to the costs or disbursements to which Plaintiff is supposedly entitled").

### CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Court enter judgment for Plaintiff against Defendants, jointly and severally, in the amount of $140,890.00 in compensatory damages plus pre-judgment interest at the rate of nine percent per annum from September 17, 2022 until the date that judgment is entered. It is further recommended that the judgment include an award of punitive damages against Defendants, jointly and severally, in the amount of $281,780.00, as well as costs in the amount of $405.00.

Dated:      New York, New York
            February 24, 2025

_____
STEWART D. AARON
United States Magistrate Judge

\*       \*       \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1). Any requests for an extension of time for filing objections must be addressed to Judge Torres.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).